IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Edward W. Nottingham**

Civil Action No. 05–cv–00803–EWN

GOLDEN RULE INSURANCE
COMPANY,

    Plaintiff,

v.

CAROL ANN SKEES, and
WILLIAM D. SKEES

    Defendants.

---

**ORDER AND MEMORANDUM OF DECISION**

---

Plaintiff Golden Rule Insurance Company requests the court to declare a contract insuring the health of Defendant William D. Skees (hereinafter "Defendant") void based on alleged misrepresentations made in Mr. Skees' application for insurance. Defendants Carol Ann Skees and William D. Skees (hereinafter "Defendants") assert counterclaims for breach of insurance contract and bad faith. This matter is before the court on Plaintiff's motion for summary judgment, filed October 29, 2007. Jurisdiction is premised upon 28 U.S.C. § 1332.

**FACTS**

*1.  Factual Background*

    *a.  Application for Insurance*

On April 1, 2003, Carol Ann Skees applied to Plaintiff for a health insurance policy.

1

(Compl. I–4, Pl.'s Br. in Supp. of Mot. for Summ. J. [hereinafter "Pl.'s Br."], Statement of Undisputed Material Facts [hereinafter "SOF"] ¶ 40 [filed Nov. 1, 2007]; *admitted at* Defs.' Resp. to Pl.'s Mot. for Summ. J. [hereinafter "Defs.' Resp."], Resp. to the Statement of Undisputed Material Facts [hereinafter "RSOF"] ¶ 40 [filed Nov. 26, 2007].) Mrs. Skees was the proposed insured on the application and Mr. Skees was to be covered as her spouse. (*See* Pl.'s Compl. for Declaratory Judgment [hereinafter "Complaint"] I–5.) Mr. Skees was not involved with the process of applying for coverage. (Pl.'s Br., SOF ¶ 39; *admitted at* Defs.' Resp., RSOF ¶ 39.) Mr. Skees initialed each page of the application and signed it in three locations. (*Id.*, SOF ¶ 41; *admitted at* Defs.' Resp., RSOF ¶ 41.)

Along with their application, Defendants signed a medical release that authorized Plaintiff to obtain their medical records. (Defs.' Resp., Statement of Additional Undisputed Facts [hereinafter "SAF"] ¶ 1; *admitted at* Pl.'s Reply in Supp. of Mot. for Summ. J. [filed Dec. 13, 2007] [hereinafter "Pl.'s Reply"]; Response to Statement of Additional Undisputed Facts [hereinafter "RSAF"] ¶ 1.) Mrs. Skees testified that she was told by an employee of Plaintiff in a telephone call that the application would take a month to approve because Plaintiff needed to obtain Defendants' medical records. (*Id.*, Ex. A at 4–5 [Mrs. Skees Dep.].) The insurance policy (hereinafter the "Skees Policy") became effective on May 1, 2003. (Pl.'s Br., SOF ¶ 38; *admitted at* Defs.' Resp., RSOF ¶ 38.)

### b. *Mr. Skees' Triple Bypass Surgery*

On June 14, 2003, Mr. Skees reported to the emergency room at Yampa Valley Hospital

complaining of chest pain.[1] (*Id.*, Ex. 3 [6/14/03 Medical Records].); Pl.'s Reply, Ex. 27 [correspondence between Mr. Skees and Yampa Valley Medical Center requesting his medical record].) Subsequently, Mr. Skees was admitted to Porter Adventist Hospital where he was diagnosed with coronary artery disease. (Pl.'s Br., Ex. 2 at 10–11 [McKinney Dep.], Ex. 4 [6/19/03 Medical Records].); Pl.'s Reply, Ex. 28 [correspondence between Plaintiff and Porter Hospital, and Release].) Mr. Skees had triple bypass surgery on June 19, 2003. (Pl.'s Br., SOF ¶ 4; *admitted at* Defs.' Resp., RSOF ¶ 4.)

    *c.    Mr. Skees' Insurance Benefit Claim*

On June 23, 2003 Mr. Skees' submitted his claim for health insurance benefits to Plaintiff, his health insurance carrier. (*Id.*, SOF ¶¶ 5–6; *admitted at* Defs.' Resp., RSOF ¶¶ 5–6.) Mr. Skees' claim was sent to Plaintiff's pre-screening unit and his medical records were requested and reviewed by a pre-screening analyst. (*Id.*, SOF ¶ 8; *admitted at* Defs.' Resp., RSOF ¶ 8.) Mr. Skees' file was then sent to Candy McKinney in the claims unit. (*Id.*, SOF ¶ 9;

---

1 Defendants generally object to most information obtained from the medical records arguing Plaintiff has failed to authenticate the medical records and that they are hearsay. (*See*, *e.g.*, Defs.' Resp., RSOF ¶¶ 1, 2, 3.) However, (1) considering that Plaintiff has expressed its intention to call Drs. Daniel Garfinkel and Jon Peters to testify regarding Mr. Skees' medical records, (Pl.'s Reply, Ex. 31 [Pl.'s Expert Witness Disclosure],) (2) taking the appearance, content, substance, and internal pattern of the medical records into account, and (3) absent any specific allegation on Defendants' behalf disputing the accuracy of any piece of information on the record or offering any alternative fact-scenario or contrary evidence that would suggest the falsity of the record, for the purpose of this motion, the court finds Defendants' objection to the authenticity of the medical record without merit. *See* FED. R. EVID. 901(b)(4). Moreover, the court agrees with Plaintiff that the medical records fall within the hearsay exception under Federal Rule of Evidence 803(4), because (1) the statements in the medical records were made for purposes of diagnosis or treatment, (2) were about (i) medical history (ii) and past or present symptoms and pain, and (3) they were reasonably pertinent to diagnosis or treatment. *See Danaipour v. McLarey*, 386 F.3d 289, 297 (1st Cir. 2004) (footnote omitted).

*admitted at* Defs.' Resp., RSOF ¶ 9.) Ms. McKinney reviewed the record to determine whether there was medical information that was not disclosed in the application. (*Id.*, SOF ¶ 18; *admitted at* Defs.' Resp., RSOF ¶ 18.) She testified that she always sends the file to the underwriting department if there is any information in the medical record that was not on the application. (Pl.'s Br., Ex. 2 at 5–6 [McKinney Dep.].)

Ms. McKinney sent the pre-application medical records to Julie Collins in the underwriting department for review. (*Id.*, SOF ¶ 20; *admitted at* Defs.' Resp., RSOF ¶ 20.) Ms. McKinney reviewed Ms. Collins' opinion. (*Id.*, SOF ¶ 23; *admitted at* Defs.' Resp., RSOF ¶ 23.) She testified that she believed that there were knowing material misrepresentations on Mr. Skees' application. (*Id.*, Ex. 2 at 13 [McKinney Dep.].) On September 4, 2003, Plaintiff denied Mr. Skees' claim for benefits and asserted that his insurance coverage was rescinded because of material misrepresentations on his application. (*Id.*, SOF ¶ 27; *admitted at* Defs.' Resp., RSOF ¶ 27.)

> i. *Mr. Skees' Application and His Medical Records*
>
> (a) *Question 22.b, Chest Pain*

Question 22.b of the application asked: "[i]n the past 10 years, has any applicant had any indication, signs, symptoms, diagnosis, or treatment of:" chest pain? (*Id.*, SOF ¶ 56; *admitted at* Defs.' Resp., RSOF ¶ 56.) Defendants' answer was "no."[2] (*Id.*, SOF ¶ 57; *admitted at* Defs.' Resp., RSOF ¶ 57.)

---

2 Mr. Skees alleges that he did not fill out the application but does not dispute the fact that the answers Defendants provided to question 22.b, 22.g, and 24.a were "no," nor does he dispute the fact that he put his initials on each page and signed the application. (*See* Def.'s Resp., RSOF ¶ 57.)

On May 2, 2000, Mr. Skees saw Dr. Mackie, one of Dr. Garfinkel's — Mr. Skees' physician — partners. (Pl.'s Br., SOF ¶ 57; *admitted at* Defs.' Resp., RSOF ¶ 57.) Mr. Skees' medical record shows that at that time he had pain in his chest that was squeezing and radiating to his left upper extremity. (Pl.'s Br., Ex. 11 [5/2/00 Medical Records].) The record shows that he reported to the doctor that he had experienced similar pain symptoms in the mountains one year earlier. (*Id.*) Mr. Skees was given a prescription for nitroglycerin to use in case of chest pain. (*Id.*, Ex. 13 [5/3/00 Message Form].)

In her deposition, in answer to the question whether their negative answer to question 22.b was correct, Mrs. Skees testified that "after our discussion today, if I were filling it out, I would put yes." (*Id.*, SOF ¶ 69; *admitted at* Defs.' Resp., RSOF ¶ 69.) Had Mr. Skees' chest pain been disclosed his application would have been declined or his health insurance issued with a rider excluding all converge for heart conditions. (*Id.*, SOF ¶ 70; *admitted at* Defs.' Resp., RSOF ¶ 70.)

### (b) *Question 22.g, Elevated Cholesterol*

Question 22.g of the application asked: "[i]n the last 10 years has any applicant had any indication, signs, symptoms, diagnosis, or treatment of:" elevated cholesterol? (*Id.*, SOF ¶ 74; *admitted at* Defs.' Resp., RSOF ¶ 74.) Defendants' answer was "no." (*Id.*, SOF ¶ 75; *admitted at* Defs.' Resp., RSOF ¶ 75.)

Mr. Skees had blood work done during his visit with Dr. Garfinkel in late April 1995 that showed that he had elevated cholesterol levels. (*Id.*, SOF ¶¶ 76, 78; *admitted at* Defs.' Resp., RSOF ¶¶ 76, 78.) On October 18, 1996, Mr. Skees visited Dr. Garfinkel's partner, Dr. Reynolds, who also ordered a cholesterol profile and found that Mr. Skees' cholesterol levels were

elevated.  (*Id.*, SOF ¶¶ 79–80; *admitted at* Defs.' Resp., RSOF ¶¶ 79–80.)  Mr. Skees' medical record shows that he was prescribed Pravachol to treat his elevated cholesterol but that he never took it.  (*Id.*, SOF ¶ 87; *admitted at* Defs.' Resp., RSOF ¶ 87.)  On May 14, 2002, Mr. Skees' blood work still showed elevated cholesterol.  (*Id.*, SOF ¶ 96; *admitted at* Defs.' Resp., RSOF ¶ 96.)

Plaintiff's underwriting guidelines provide that an application should be declined if the applicant is non-compliant with a physician's regimen regarding cholesterol or triglycerides.  (*Id.*, SOF ¶ 105; *admitted at* Defs.' Resp., RSOF ¶ 105.)

### (c) *Question 24.a, Disease, Disorder, or Abnormality of the Heart or Circulatory System*

Question 24.a of the application asked: "[i]n the last 10 years has any applicant had any indication, signs, symptoms, diagnosis, or treatment of:" heart or circulatory system?  (*Id.*, SOF ¶ 106; *admitted at* Defs.' Resp., RSOF ¶ 106.)  Defendants' answer was "no."  (*Id.*, SOF ¶ 107; *admitted at* Defs.' Resp., RSOF ¶ 107.)

In the ten years prior to submitting their application, Mr. Skees was diagnosed with elevated cholesterol levels five times.  (*Id.*, Ex. 12 at 6–7, 12, 23, 24–26 [Dr. Garfinkel Dep.].)  Dr. Garfinkel testified that Mr. Skees' elevated cholesterol and family history — his brother had a heart attack, (*id.*, SOF ¶ 108; *admitted at* Defs.' Resp., RSOF ¶ 108) — were two factors for heart, blood vessel and circulatory system disease.  (*Id.*, Ex. 12 at 10, 19 [Dr. Garfinkel Dep.].)

Plaintiff would have conducted an extensive medical review and Mr. Skees' application for insurance would been declined if he had answered yes to question 24.a.  (*Id.*, SOF ¶ 123; *admitted at* Defs.' Resp., RSOF ¶ 123.)

### d. *The Allegedly Disclosed Information*

6

Mrs. Skees testified that during a telephone conversation prior to the issuance of insurance she told Plaintiff that Dr. Garfinkel was Mr. Skees' physician. (Defs.' Resp., Ex. A at 4–5 [Mrs. Skees Dep.].) She also testified that during another telephone conversation with a Golden Rule Insurance Company employee, after submitting the application, she told Plaintiff that Mr. Skees had rheumatic fever as a child. (*Id.*, Ex. A at 5 [Mrs. Skees Dep.].) She remembered asking the employee to return her application so she could "refill" it, but the employee told her that she did not have any reason to do that. (*Id.*) Additionally, she testified that after signing the medical release and based on what she remembered from her conversations with Plaintiff's employee, she fully expected them to examine their medical records and rely "on the whole thing." (*Id.* Ex. A at 8 [Mrs. Skees Dep.].) Plaintiff denies all four above statements and, in support, offers the affidavit of Ellen Stuffle, an "Application Developer II and I administer [sic]" responsible for the call recording system and the transcription of the calls involving Mrs. Skees, prepared by Ms. Stuffle. (Pl.'s Reply., Exs. 32 [Stuffle Aff.], 33–34 [Wav File Transcriptions].)

## 2. *Procedural History*

On April 29, 2005, Plaintiff filed its complaint, seeking a declaration that: (1) it acted properly in voiding the Skees Policy and thus had no obligation or duty to pay any medical or hospital bills incurred by Mr. Skees; and (2) it had "the right to deny the aforesaid claim by virtue of the terms of the certificate [the Skees Policy]" in the event the court finds Plaintiff did not have the right to void the certificate. (Compl. ¶¶ I–27–1, II–25 [filed Apr. 29, 2005].) On November 7, 2005, Defendants filed their answer, asserting counterclaims for: (1) bad faith breach of insurance contract; (2) breach of contract; (3) negligent misrepresentation; (4) unjust

enrichment; (5) fraud; and (6) violation of the Colorado Consumer Protection Act, Colorado Revised Statutes section 6–1–101 et seq. (Answer with Counterclaims and Jury Demand [filed Nov. 7, 2005].) On November 18, 2005, Plaintiff responded to Defendants' counterclaims. (Golden Rule Ins. Co. [sic] Answer and Affirmative Defenses to Defs.' Counterclaims [filed Nov. 18, 2005] [hereinafter "Answer"].) On February 13, 2006, the Honorable Richard P. Matsch dismissed Defendants' negligent misrepresentation, unjust enrichment, fraud, and Consumer Protection Act counterclaims.[3] (Order [filed Feb. 13, 2006].)

On October 29, 2007, Plaintiff filed a motion for summary judgment, asserting that: (1) they meet all requirements set by the Colorado Supreme Court to rescind the Skees policy and therefore the court should summarily adjudicate this issue; and (2) if the policy is properly rescinded, Defendants' remaining counterclaims should fail. (*See* Pl.'s Br.) On November 26, 2007, Defendants responded arguing that Plaintiff's motion should be denied because there exist issues of material fact as to two of the five elements Plaintiff must prove, *i.e.*, whether (1) Defendants acted knowingly; and (2) Plaintiff is chargeable with knowledge of the facts. (Defs.' Resp. 15–18.) On December 13, 2007, Plaintiff filed its reply. (Pl.'s Reply.)

## ANALYSIS

### 1. *Legal Standard*

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the court may grant summary judgment where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is

---

3 This case was originally assigned to Judge Matsch and subsequently was reassigned to me on July 17, 2007.

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c) (2008); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works*, 36 F.3d at 1518 (citing *Celotex,* 477 U.S. at 325). The nonmoving party may not rest solely on the allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see* Fed. R. Civ. P. 56(e). A fact in dispute is "material" if it might affect the outcome of the suit under the governing law; the dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997) (citing *Anderson*, 477 U.S. at 248). The court may consider only admissible evidence when ruling on a summary judgment motion. *See World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985). The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment. *Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998) (citing *Concrete Works*, 36 F.3d at 1517).

2.    *Evaluation of Claims*

    a.    *Avoidance of Life Insurance Policies*

The parties agree that Colorado law controls. In order to be entitled to rescind an insurance policy based upon misrepresentations in the application, the insurer must establish that:

9

> (1) the applicant made a false statement of fact or concealed a fact in his application for insurance; (2) the applicant knowingly made the false statement or knowingly concealed the fact; (3) the false statement of fact or the concealed fact materially affected either the acceptance of the risk or the hazard assumed by the insurer; (4) the insurer was ignorant of the false statement of fact or concealment of fact and is not chargeable with knowledge of the fact; (5) the insurer relied, to its detriment, on the false statement of fact or concealment of fact in issuing the policy.

*Hollinger v. Mut. Benefit Life Ins. Co*, 560 P.2d 824, 827 (Colo. 1977) (footnote omitted); *Pee v. Am. Family Life Ins. Co.*, 15 Fed. App'x 618, 619 (10th Cir. 2001).

Defendants argue that "Plaintiff's motion for summary judgment must fail because there exist genuine issues of material fact in dispute" and because Plaintiff has failed to prove the second and fourth factors of the above test. (Defs.' Resp. at 15–16.) The court will discuss each element in turn.

### i. *False Statement or Concealment*

First, Plaintiff must prove that Defendants made a false statement of fact or concealed a fact in the application for insurance. *Hollinger*, 560 P.2d at 827. Plaintiff claims that Mr. Skees' negative answers to questions regarding the chest pain, elevated cholesterol and heart or circulatory system problems constitute misrepresentation or concealment of fact because in fact prior to submission of the application (1) he reported to the doctor that he had chest pain and was given a prescription for Nitroglycerin to use,[4] (Pl.'s Br., Ex. 11 [5/2/00 Medical Records], Ex. 13 [5/3/00 Message Form],) (2) he had elevated cholesterol and was prescribed Pravachol to treat it,

---

4 In addition, Mrs. Skees testified that if she were completing the application today she would answer "yes" to the question whether in the past ten years, any applicant has had any indication, signs, symptoms, diagnosis, or treatment of chest pain. (*See* Pl.'s Br., SOF ¶ 69; *admitted at* Defs.' Resp., RSOF ¶ 69.)

10

(*id.*, SOF ¶¶ 76–80, 87, 96; *admitted at* Defs.' Resp., RSOF ¶¶ 76–80, 87, 96,) and (3) he was told that his elevated cholesterol and family history were two factors for heart, blood vessels and circulatory system disease. (*Id.*, SOF ¶ 108; *admitted at* Defs.' Resp., RSOF ¶ 108, Ex. 12 at 10, 19 [Dr. Garfinkel Dep.].) The court agrees.

As demonstrated above, Defendants do not contest that the application did not contain the information necessary to answer truthfully to questions 22.b, 22.g, and 24.a, and admit that "Plaintiff has shown . . . that the medical records include a lot of information which is not on the application." (Defs.' Resp. at 16.) Therefore, the court finds that Plaintiff has established the first element of the *Hollinger* test.

### ii. *Knowing Misrepresentation or Concealment*

Second, Plaintiff must prove that Defendants knowingly made a false statement or concealment. *Hollinger*, 560 P.2d at 827. The second prong of the *Hollinger* test "require[s] an element of knowledge, while dispensing with proof of an intent to deceive." *Wade v. Olinger Life Ins. Co.,* 560 P.2d 446, 451 (Colo. 1977).

Defendants argue that Plaintiff has "failed to establish that Mr. or Mrs. Skees acted knowingly." (Defs.' Resp. at 15.) Defendants' only basis for this argument seems to be that "there is no evidence that this [not including the information regarding the chest pain, elevated cholesterol, and heart and circulatory system] was due to anything more nefarious than confusion or, at worst, negligence." (*Id*. at 16.)

However, the undisputed facts, *see Analysis 2ai, supra*, clearly indicate that to answer questions 22.b, 22.g, and 24.a truthfully, the Skees should have informed Defendant of the chest pain, elevated cholesterol, and family history of heart disease because they knew Mr. Skees'

11

medical history. The Skees do not deny, and in fact admit, that they failed to provide all relevant information that was later obtained through Mr. Skees' medical records. (*See* Defs.' Resp. at 16.) Therefore, the court finds that Defendants are "reasonably chargeable with knowledge that the facts omitted or misrepresented were within the scope of questions asked on the application." *See Wade,* 560 P.2d at 452.

### iii. *Materiality of the Misrepresentation*

Third, Plaintiff must prove "the false statement of fact or the concealed fact materially affected either the acceptance of the risk or the hazard assumed by the insurer." *Hollinger*, 560 P.2d at 827. Plaintiff argues that Mr. Skees' misstatement materially affected its acceptance of the risk embodied by the Skees Policy. (Pl.'s Br. at 27–28.)

The Colorado Supreme Court indicated that a misrepresentation "must be [a]ctually material to the insurer's risk, as demonstrated by customary underwriting procedures . . . ." *Wade*, 560 P.2d at 409. In this case, undisputed facts indicate that (1) had Mr. Skees' chest pain been disclosed his application would have been declined or his health insurance would have been issued with a rider excluding all converge for heart conditions, (*id.*, SOF ¶ 70; *admitted at* Defs.' Resp., RSOF ¶ 70;) (2) Plaintiff's underwriting guidelines provide that an application should be declined if the applicant is non-compliant with a physician's regimen regarding cholesterol or triglycerides, (*id.*, SOF ¶ 105; *admitted at* Defs.' Resp., RSOF ¶ 105;) and (3) Plaintiff would have conducted an extensive medical review, and Mr. Skees' application for insurance would been declined if he had answered yes to question 24.a, (*id.*, SOF ¶ 123; *admitted at* Defs.' Resp., RSOF ¶ 123.).

Consequently, the court finds that there is no material issue of fact as to whether non-

disclosure of Mr. Skees' chest pain, elevated cholesterol, and family history of heart disease materially affected the hazard assumed by Plaintiff under the Skees Policy.

### iv. *Access to Information — Chargeability with Knowledge of Concealment*

Fourth, Plaintiff must prove it "was ignorant of the false statement of fact or concealment of fact and is not chargeable with knowledge of the fact." *Hollinger*, 560 P.2d at 827. "An insurance company may be charged with knowledge of facts which it ought to have known." *Columbian Nat. Life Ins. Co. of Boston, Mass., v. Rodgers*, 116 F.2d 705, 707 (10th Cir. 1940) (citing *Supreme Lodge K. P. v. Kalinski*, 163 U.S. 289, 299, 16 S.Ct. 1047, 1051 [1896]).

Under Colorado law, "[i]f the respondents have **access** to information that was equally available to both parties and would have led to the true facts, the respondents have no right to rely upon the false representation." *M.D.C./Wood, Inc. v. Mortimer*, 866 P.2d 1380, 1381 (Colo. 1994) (emphasis added); *see also J.A. Walker Co., Inc. v. Cambria Corp.*, 159 P.3d 126, 129 (Colo. 2007); *Bassford v. Cook*, 380 P.2d 907, 909–10 (Colo. 1963) (in dep't) (applying the test and finding that buyers were not justified in relying on arguably inaccurate explanations for cracks in the walls of a house when the seller had given them the contact information of the engineer who could explain the problem in more detail); *Bedard v. Martin*, 100 P.3d 584, 592 (Colo. Ct. App. 2004) (applying the test in a case where the contract gave plaintiff the right to inspect all title documents and finding that plaintiff's "negligent misrepresentation claim failed because the parties were equally capable of discovering the true facts.").

Plaintiff argues that it should not be charged with knowledge of the information in Mr. Skees' medical records because "the undisputed evidence establishes that Golden Rule did not know about Mr. Skees' prior medical history indicating a possible heart condition." (Pl.'s Br. at

13

29.) Defendants, however, argue that Plaintiff ought to have known that Mr. Skees had heart problems because (1) Mrs. Skees had given Plaintiff the information regarding Mr. Skees' treating physician, (2) Mrs. Skees had told Plaintiff that Mr. Skees had rheumatic fever as a child, and (3) Plaintiff had equal access to all information it needed because Defendants had signed a medical release in Plaintiff's request. (Defs.' Resp. at 15–16.)

Plaintiff heavily relies on the outcome in *West Coast Life Insurance Company v. Hoar*, 505 F. Supp. 2d 734 (D. Colo. 2007) and argues that:

> As was true in West Coast, "[n]o reasonable mind would perceive this set of facts as one that would put 'a prudent man on notice and would have caused him to start an inquiry'" into whether Mr. Skees had experienced chest pains, had elevated cholesterol, or had indications, signs, symptoms, diagnosis, or treatment of any disease, disorder or abnormality of the heart or circulatory system.

(Pl.'s Br. at 29 [citing *Hoar*, 505 F. Supp. 2d at 752.].) The court disagrees, and, for the reasons stated below, finds the facts and arguments made by parties in this case and *Hoar* distinguishable.

In *Hoar*, defendant claimed that plaintiff was chargeable with knowledge of defendant's involvement in "heli-skiing because Plaintiff should have investigated 'what type of skiing [Mr. Butts] enjoyed' once it learned he skied." *Hoar*, 505 F. Supp. 2d at 752. In *Hoar*, the fact that Mr. Butts had not disclosed any information regarding his involvement in heli-skiing was not in dispute.[5]

---

5 As a result, the court's analysis was limited to the issue of notice, *i.e.*, whether a "reasonable mind would perceive this set of facts as one that would put 'a prudent man on notice and would have caused him to start an inquiry' into whether the skiing Mr. Butts' [sic] engaged in was resort skiing or backcountry helicopter skiing." *Hoar*, 505 F. Supp. 2d at 752. The facts before the court in *Hoar* were: "(1) Mr. Butts' negative response to Question 5; (2) Mr. Butts' report to Mr. Chu that the only hazardous activities in which he engaged were scuba diving and private

14

By contrast, in this case, Defendants' argument is based on the specific but disputed facts that (1) Mrs. Skees remembered that Plaintiff's employee said that they would review Skees' medical records before issuing the policy, (2) Plaintiff was aware of Mr. Skees' rheumatic fever, and (3) Mrs. Skees gave Plaintiff the information regarding Mr. Skees' treating physician. (Defs.' Resp. at 15–16.) In addition, Defendants rely on the fact that they signed medical releases. (*Id.*) Accordingly, Defendants claim that under Colorado law, Plaintiff has failed to prove that it is not chargeable with knowledge of the facts in Mr. Skees' medical records and therefore has no right to rely upon the false representation, *see Hoar*, 505 F. Supp. 2d at 751 (citing *Mortimer*, 866 P.2d at 1380 [sic]), because (1) Mrs. Skees' report of Mr. Skees' rheumatic fever, which can cause heart damage, ought to have put Plaintiff on notice,[6] *see Rodgers*, 116 F.2d at 707; and (2) by requiring the Skees to sign medical releases Plaintiff gained equal access to all information in Mr. Skees' medical records that would have led to the true

---

aviation; and (3) Mr. Butts' report to Mr. Chu that he "also enjoy[ed] skiing and golfing in his spare time." *Id*.

6 Plaintiff rejects Defendant's argument that "that disclosure of rheumatic fever as a child should have triggered an inquiry into . . . abnormality of the heart," and concludes that "no reasonable mind would perceive this set of facts [including signing the release . . . ] as one that would put a prudent man on notice and would have caused him to start an inquiry." (Pl.'s Reply. at 17 [citation omitted].) However, it does not dispute that rheumatic fever is: "an acute often recurrent disease occurring chiefly in children and young adults and characterized by fever, inflammation, pain, and swelling in and around the joints, inflammatory involvement of the pericardium and valves of the heart, and often the formation of small nodules chiefly in the subcutaneous tissues and the heart. Merriam-Webster's Medical Dictionary, http://medical.merriam-webster.com/medical/rheumatic%20fever. Considering the definition of rheumatic fever, and the fact that the jurisprudence of insurance cases is replete with cases taking note of questions in insurance applications specifically asking whether the applicant had suffered from rheumatic fever, the court finds Plaintiff's conclusion unpersuasive. *See*, *e.g.*, *Hoar,* 505 F. Supp. 2d at 745 (citing *Wade*, 560 P.2d at 448); *Yumukoglu v. Provident Life & Acc. Ins. Co.*, 131 F. Supp. 2d 1215, 1218 (D.N.M. 2001).

facts, *see Mortimer*, 866 P.2d at 1381. (Defs.' Resp. at 15–16, Answer at 5–6.)

Under Colorado law, "the matter of imputation of knowledge and waiver are factual issues that must be determined by a jury." *Murray v. Montgomery Ward Life Ins. Co.*, 584 P.2d 78, 80 (Colo. 1978) (en banc) (applying the *Hollinger* test). Therefore, based on the foregoing, the court finds that viewing the release, and the specific disputed facts in this case, in the light most favorable to Defendants, a reasonable jury could find that Plaintiff is chargeable with the knowledge of the facts on Mr. Skees' medical records.

### v. *Reliance*

Finally, Plaintiff must prove that it "relied, to its detriment, on the false statement of fact or concealment of fact in issuing the policy." *Hollinger*, 560 P.2d at 827. Defendants do not dispute that Plaintiff relied on the concealment of facts in issuing the policy but argue that Plaintiff should have relied on both the application and the medical records available to it before issuing the Skees Policy instead of relying solely on the application. (Defs.' Resp. at 13, 15.)

Under Colorado law, it is "'well settled' that plaintiffs must show that their reliance on a material misrepresentation was justified." *Shoels v. Klebold*, 375 F.3d 1054, 1069 (10th Cir. 2004) (citing *Mortimer*, 866 P.2d at 1383); *see also* Colorado Jury Instructions, Civil, § 19.1 (False Representation–Elements of Liability) (4th ed. 2007). "Reliance is not justifiable if another person of similar intelligence, education, or experience would not have relied on the alleged representation." *Id.*; Colorado Jury Instructions, Civil, § 19.8 (False Representation–Reliance–Defined) (4th ed. 2007).

Defendants allege that Plaintiff's reliance on the application was not justifiable because (1) as Plaintiff had allegedly told Mrs. Skees, it should have reviewed their medical records

16

before issuing the policy, and (2) businesses in similar situation would not limit themselves to the applicants statement in applications: "when a mortgage company takes a credit card — credit application for a house, they don't just rely on what the person is telling them. Same thing." (Defs.' Resp. at 13, Ex. A at 7–8 [Mrs. Skees Dep.], 15.)

Under Colorado law, "[w]hether a person seeking rescission of a contract has a right to rely on the misrepresentation is a question of fact" that should be supported by the evidence. *Mortimer*, 866 P.2d at 1382. In this case, the facts whether (1) Plaintiff is charged with the knowledge of the facts in Mr. Skees' medical record, (2) Plaintiff actually told Mrs. Skees that it would not issue the policy before reviewing their medical records are in dispute. Therefore, based on the foregoing, and viewing disputed and undisputed facts of this case in the light most favorable to Defendants, the court finds that a reasonable jury could find that Plaintiff's sole reliance on the application was not reasonable and another insurance company possessing the same information would not have done so.

Based on the foregoing, the court finds that granting Plaintiff's motion for summary judgment on the issue of rescission would be improper because the disputed facts in this case might affect the outcome of the suit and lead a reasonable jury to return a verdict for the Defendants. *See Muskogee*, 119 F.3d at 839

### b. Defendants' Counterclaims — Bad Faith Breach of Insurance Contract; Breach of Contract

Defendants, in their Answer, allege that Plaintiff breached the valid insurance contract between the parties and "acted unreasonably and in bad faith in denying the claim" because "Plaintiff improperly claimed that the Defendant had not disclosed pertinent medical information, when, in fact, the Plaintiff either had this medical information in its possession, or

17

knew of its existence and had equal access to that information since the submission of the insurance application on or about April 1. 2003." (Answer at 5–7.)

Plaintiff also seeks summary judgment on Defendants' counter-claims, arguing that (1) "[b]ecause the insurance policy should be rescinded, the remaining counterclaims fail;" and (2) "[e]ven if the insurance policy is not rescinded, the bad faith claim still fails," because Plaintiff acted reasonably. (Pl.'s Br. at 31–33.)

Under Colorado law, "[f]or an insured to prevail on a bad faith breach of contract claim against an insurer, the insured must establish the insurer acted unreasonably and with knowledge or reckless disregard of its unreasonableness." *Parsons ex rel. Parsons v. Allstate Ins. Co.*, 165 P.3d 809, 815 (Colo. Ct. App. 2006) (citation omitted); *see also Travelers Ins. Co. v. Savio*, 706 P.2d 1258 (Colo. 1985). "The determination of whether an insurer has breached its duties to an insured in bad faith is one of reasonableness under the circumstances." *Id.* (citation omitted). In other words, the question is whether a reasonable insurer under the circumstances would have denied or delayed payment of the claim. *Id.* (citation omitted).

Similar to its argument for rescinding the policy, Plaintiff's argument for summary judgment on counter-claims for bad faith denial of coverage is centered upon its argument that "Golden Rule had a reasonable basis to deny Mr. Skees claim." (Pl.'s Br. at 32–33.) However, as discussed above, there are disputed issues of fact as to whether Plaintiff had a reasonable basis for rescinding the policy. Therefore, contrary to Plaintiff's argument, the record does not support the grant of summary judgment on Mr. Skees' counter-claims. *See Lips v. Am. Comm. Mut. Ins. Co.*, No. 97-1139, 1998 WL 746001, at *9 (10th Cir. 1998).

*3.     Conclusion*

Material issues of fact exist whether Plaintiff (1) was ignorant of the false statement of fact or concealment of fact and is not chargeable with knowledge of the fact; and (2) justifiably relied, to its detriment, on the false statement of fact or concealment of fact in issuing the policy. Therefore, even though the falsity of some information on the application is not in doubt, a reasonable jury could find that Plaintiff did not have the right to rescind and that Plaintiff breached the insurance contract in bad faith.

Accordingly, it is therefore ORDERED that:

1. PLAINTIFF's motion for summary judgment (#68) is DENIED.

The court will hold a Final Pretrial Conference commencing at 3:45 o'clock p.m. on August 22, 2008, in Courtroom A201 of the Alfred A. Arraj United States Courthouse, 901 19th Street, Denver, Colorado. In preparing for and participating in the conference, the parties and counsel will (1) follow the Instructions for Preparation and Submission of Final Pretrial Order, a copy of which can be downloaded from the court's web site, specifically http://www.cod.uscourts.gov/Documents/Judges/EWN/ewn_fin_pre_ord_ins.pdf and (2) utilize the specific template located at http://www.cod.uscourts.gov/Documents/Judges/EWN/ewn_fin_pre_ord.wpd These specific web addresses should be used to insure that the proper format is observed.

Dated this 29th day of July, 2008.

                      BY THE COURT:

                      s/ Edward W. Nottingham
                      EDWARD W. NOTTINGHAM
                      Chief United States District Judge